UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>JASON WILLIAM HINDMAN,<br><br>  Defendant. | CASE NO. 3:23-cr-05062-DGE<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 33) |

## I    INTRODUCTION

This matter comes before the Court on Defendant Jason Hindman's Motion to Dismiss the indictment (Dkt. No. 33) as a violation of his rights under the Second Amendment to the United States Constitution. Having reviewed the Government's response (Dkt. No. 36) and Hindman's reply (Dkt. No. 49), the parties' supplemental authority (Dkt. Nos. 48, 50), and the relevant record, the Court **DENIES** the motion.

## II  BACKGROUND

Hindman is charged by indictment with one count of unlawful possession of a firearm and ammunition having been previously convicted of a felony under 18 U.S.C. § 922(g)(1). (Dkt. No. 13 at 1–2.)  The indictment alleges on or about February 8, 2023, Hindman possessed a rifle and ammunition while knowing that he was convicted of a prior felony of Unlawful Possession of a Firearm on or about May 4, 2011 in this district.  (*Id.*)  The firearm and ammunition were recovered upon execution of a search warrant to obtain evidence of Hindman's alleged involvement in manufacturing explosives without a license and malicious placement of an explosive in violation of Washington law.  (Dkt. No. 4 at 5–6.)

Hindman moves to dismiss the indictment on the ground that 18 U.S.C. § 922(g)(1) violates the Second Amendment to the U.S. Constitution, both on its face and as applied.  (Dkt. No. 33 at 1.)

## III  DISCUSSION

### A. Legal Standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  A pretrial motion is proper when "it involves questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

### B. Felon in Possession statute

18 U.S.C. § 922(g)(1) states:

> It shall be unlawful for any person . . .who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which was been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Hindman argues recent Supreme Court precedent *Rifle & Pistol v. Bruen*, 142 S. Ct. 2111 (2022) renders § 922(g)(1) unconstitutional because the Government cannot produce evidence of a well-established historical analogue from a relevant era supporting the categorical disarmament of convicted felons. (Dkt. No. 33 at 1–2.) The Government argues Ninth Circuit precedent, undisturbed by *Bruen*, holds that "felons are categorically different from the individuals who have a fundamental right to bear arms." (Dkt. No. 36 at 1–2) (citing *United States v. Vongxay*, 594 F.3d 1111, 1115, 1118 (9th Cir. 2010)).

### C. Second Amendment Jurisprudence before *Bruen*

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court held in *District of Columbia v Heller* the Second Amendment's right to keep and bear arms is an individual right. 554 U.S. 570, 573–626 (2008). Like other individual rights, "the right secured by the Second Amendment is not unlimited." *Id.* at 626. One potential limitation, directly at issue here, is a convicted felon's ability to bear arms. The Supreme Court in *Heller* stated explicitly that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.*

Two years after *Heller*, the Ninth Circuit directly answered the question Hindman presents here. In *United States v. Vongxay*, the court held § 922(g)(1) "does not violate the Second Amendment as it applies to Vongxay, a convicted felon." 594 F.3d 1111, 1118 (9th Cir. 2010). *Vongxay* observed that *Heller* categorized longstanding prohibitions on the possession of firearms by felons as "presumptively lawful regulatory measures." *Id.* at 1115 (quoting *Heller*,

554 U.S. at 626–627 n.26). Because of this, "felons are categorically different from the individuals who have a fundamental right to bear arms." *Vongxay*, 596 F.3d at 1115.

Four months after *Vongxay*, the Supreme Court again defined the scope of the Second Amendment, holding the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right as recognized in *Heller*. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). For the second time, the Court emphasized:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here.

*Id.* at 786 (citations omitted).

In 2014, the Ninth Circuit confirmed the constitutionality of § 922(g)(1) in *Van Der Hule v. Holder*, in which a defendant argued § 922(g)(1)'s ban unconstitutionally burdened his Second Amendment right. 759 F.3d 1043, 1050–1051 (9th Cir. 2014) ("We addressed whether § 922(g)(1) violates the Second Amendment in [*Vongxay*] and determined that it did not . . . We see no reason to change our view now.").

### D.  *Bruen*'s rejection of means-to-end scrutiny

In 2022, the Supreme Court rejected the widely accepted two-step framework the Courts of Appeals used in analyzing Second Amendment challenges. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). At the first step, the government had an opportunity to establish the challenged law regulates activity falling outside the scope of the right as originally understood. *Id.* at 2126 (citing *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). The courts then ascertained the original scope of the right based on its historical meaning. *Bruen*, 142 S. Ct. at 2126 (citing *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017)).

If the Government could prove the regulated conduct fell beyond the Second Amendment's original scope, the analysis stopped there because the regulated activity was categorically unprotected. *Bruen*, 142 S. Ct. at 2126 (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). But if the historical evidence was inconclusive or suggested the regulated activity was not categorically unprotected, the analysis proceeded to step two. *Bruen*, 142 S. Ct. at 2126 (quoting *Kanter*, 919 F.3d at 441).

At the second step, courts analyzed how close the law came to the core of the Second Amendment right and the severity of the law's burden on that right. *Id.* If a "core" Second Amendment right was burdened, courts applied strict scrutiny to determine whether the law was narrowly tailored to achieve a compelling governmental interest. *Bruen*, 142 S. Ct. at 2126 (quoting *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017)). Otherwise, the courts applied intermediate scrutiny and considered whether the regulation was substantially related to the achievement of an important governmental interest. *Bruen*, 142 S. Ct. at 2126–2127 (quoting *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).

*Bruen* rejected the second half of this approach, which it deemed "one step too many," finding *Heller* and *McDonald* did not support applying means-end scrutiny in a Second Amendment context. *Bruen*, 142 S. Ct. at 2127. Instead, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. To justify the regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*

### E.   § 922(g)(1) after *Bruen*

Hindman's basis for dismissal would have been rejected outright had his claim been raised in this circuit before *Bruen*. But, with no circuit precedent after *Bruen* explicitly affirming the constitutionality of § 922(g)(1), courts are left to determine to what extent reliance on pre-*Bruen* precedent like *Vongxay* and *Van Der Hule* is permissible.

When the Supreme Court has undercut the theory or reasoning underlying a prior circuit precedent in such a way that the cases are clearly irreconcilable, the court should consider itself bound by that authority and the prior precedent effectively overruled. *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir. 2003) (en banc); s*ee also In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018) (requiring the intervening authority to be "fundamentally inconsistent" with prior precedent). "[T]he clearly irreconcilable requirement is a high standard." *Avilez v. Garland*, 69 F.4th 525, 533 (9th Cir. 2023) (internal quotation marks omitted) (quoting *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019)). "It is not enough for there to be 'some tension' between the cases or for the intervening authority to 'cast doubt' on this Court's prior authority." *Tingley v. Ferguson*, 47 F.4th 1055, 1075 (9th Cir. 2022) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)). "[I]f we can apply our precedent consistently with that of the higher authority, we must do so." *Avilez*, 69 F.4th at 533 (quoting *FTC*, 926 F.3d at 1213).

Recently, this Court joined at least 20 courts in this circuit in finding *Vongxay* is not clearly irreconcilable with *Bruen* and is therefore still binding.[1] *United States v. Tillman*, Case

---

[1] *United States v. Robinson*, No. 2:22-CR-00212-TL, 2023 WL 5634712 (W.D. Wash. Aug. 31, 2023); *United States v. Jackson*, No. CR22-37RSL, 2023 WL 1967199 (W.D. Wash. Feb. 13, 2023); *United States v. Saba*, No. CR22-248, 2023 WL 5333255 (D. Idaho Aug. 17, 2023); *United States v. Pineda*, No. CR21-482, 2023 WL 4053583 (D. Or. Jun. 16, 2023); *United States v. Buffalo Bulltail*, No. CR22-86, 2023 WL 3947823 (D. Mont. Jun. 12, 2023); *United States v. Sais*, No. CR-22-2456, 2023 WL 3510406 (S.D. Cal. May 17, 2023); *United States v. Chatman*, No. CR22-453, 2023 WL 3509699 (N.D. Cal. May 16, 2023); *United States v. Villalobos*, No.

No. 3:23-cr-05197-DGE-1, Dkt. No. 85 (W.D. Wash. 2023).  This case presents the same set of circumstances.  *Vongxay* relied on *Heller's* conclusion that laws restricting the possession of firearms by felons are presumptively lawful.  "*Vongxay* did not apply the means-ends scrutiny rejected by *Bruen*.  Rather, *Vongxay* applied *Heller*'s determination that § 922(g)(1) was constitutional because it was consistent with longstanding limitations on gun possession and because 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals) . . . .'"  *United States v. Theo Summers Buffalo Bulltail*, No. CR 22-86-BLG-SPW-1, 2023 WL 3947823, at *2 (D. Mont. June 12, 2023) (quoting *Vongxay*, 594 F.3d at 1118).  Nothing in *Bruen* suggests any portion of *Heller* was incorrectly decided.  In fact, the majority opinion in *Bruen* describes itself as "consistent with *Heller*" and "in keeping with *Heller*."  *Bruen*, 142 S. Ct. at 2122, 2126.  Because it is possible to apply *Vongxay*'s reasoning consistently with *Bruen*, this Court is required to do so.  *Avilez*, 69 F.4th at 533.

        As another judge in this district observed, while *Bruen* does not explicitly address the constitutionality of fire-arm possession bans for previously convicted felons, "it refers to those falling under the protection of the Second Amendment as 'law abiding' people (or the equivalent) twenty-four times, with over half of those references appearing in the main opinion."

---

CR19-40, 2023 WL 3044770 (D. Idaho Apr. 21, 2023); *Walker v. Bonta*, No. C20-31, 2023 WL 2815356 (S.D. Cal. Apr. 6, 2023); *United States v. Guthery*, No. CR22-173, 2023 WL 2696824 (E.D. Cal. Mar. 29, 2023); *United States v. Kilgore*, No. CR21-277, 2023 WL 2505012 (E.D. Cal. Mar. 14, 2023); *United States v. Davis*, No. CR21-206, 2023 WL 2505039 (E.D. Cal. Mar. 14, 2023); *United States v. Serrano*, No. CR21-1590, 2023 WL 2297447 (S.D. Cal. Jan. 17, 2023); *United States v. Moore*, No. CR20-474, 2023 WL 154588 (D. Or. Jan. 11, 2023); *United States v. Butts*, 637 F. Supp. 3d 1134 (D. Mont. 2022); *United States v. Delpriore*, 634 F. Supp. 3d 654 (D. Alaska 2022); *United States v. Siddoway*, No. CR21-205, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Perez*, No. CR21-508, 2022 WL 17484969 (S.D. Cal. Sep. 26, 2022); *United States v. Hill*, 629 F. Supp. 3d 1027 (S.D. Cal. 2022); *United States v. Nevens*, No. CR19-774, 2022 WL 17492196 (C.D. Cal. Aug. 15, 2022).

*United States v. Robinson*, No. 2:22-CR-00212-TL, 2023 WL 5634712, at *5 (W.D. Wash. Aug. 31, 2023) (citing *Bruen*, 142 S. Ct. at 2125, 2133, 2159).

And, although the Supreme Court has not addressed the issue head-on, many of the justices have indicated the importance or validity of § 922(g)'s restriction on the Second Amendment rights of convicted felons.[2]  *See, e.g., Rehaif v. United States*, 139 S. Ct. 2191, 2201 (2019) (Alito, J., dissenting, joined by Thomas, J.) ("And § 922(g) is no minor provision.  It probably does more to combat gun violence than any other federal law."); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .") (quoting *Heller*, 554 U.S. at 626–627 and *McDonald*, 561 U.S. at 786); *Bruen*, 142 S. Ct. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, J.J.) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on [*Heller*'s comments regarding the presumptive lawfulness of felon-in-possession laws].").

Hindman argues interpreting the Supreme Court's jurisprudence to exclude felons from the scope of the Second Amendment's individual right applies *Bruen*'s dicta rather than its holding.  (Dkt. No. 49 at 3–5.)  Rather than applying *Bruen*'s dicta, this Court applies *Vongxay*'s holding, which *is* law, is not inconsistent with *Bruen*'s holding, and is supported by *Bruen*'s dicta.  For example, consistent with the principle that the Second Amendment applies only to law-abiding citizens, *Bruen* made clear that nothing in its analysis should be interpreted to suggest the unconstitutionality of "shall-issue" state licensing regimes, in which applicants are required to undergo background checks.  *Bruen*, 142 S. Ct. at 2138 n.9.  In the Supreme Court's

---

[2] Additionally, before *Heller*, the Supreme Court upheld a previous iteration of the felon-in-possession statute against Fifth and Sixth Amendment challenges.  *Lewis v. United States*, 445 U.S. 55, 67 (1980).

view, these licensing regimes "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *Heller*, 554 U.S. at 635).

Hindman also argues § 922(g)(1) is unconstitutional as applied to him because he is not dangerous. (Dkt. No. 33 at 1, 49 at 6.) He states he "made many harmful mistakes 10 and 20 years ago . . . but *Bruen* requires the government to show founding-era laws that disarmed people who made similar mistakes." (Dkt. No. 49 at 6.) The Government argues Hindman is dangerous because he "repeatedly resisted law enforcement in the context of dangerous, high-speed vehicle chases, possessed firearms, and engaged in drug trafficking." (Dkt. No. 36 at 30.)

Whether Hindman is dangerous is not relevant to the analysis. Nor is the length of time since his felony conviction. These characteristics may be relevant to a historical analysis at step two, but because § 922(g)(1) falls outside the scope of the Second Amendment, reaching the second step of *Bruen* is unnecessary. *See United States v. Sais*, No. CR-22-2456, 2023 WL 3510406, at *3 (S.D. Cal. May 17, 2023) ("courts post-*Bruen* need not engage in historical analysis each time a Second Amendment challenge is brought. Indeed, historical analysis is only the second, and last, step of *Bruen*'s two-step test.").

Neither Congress in drafting § 922(g)(1), nor the *Bruen* Court in emphasizing the "presumptively lawful" nature of felon-in-possession laws, differentiated between types or ages of felonies. More importantly, neither mandated, much less suggested, such an analysis be performed. For the same reasons Hindman's facial challenge is not convincing, his as-applied challenge is likewise rejected. This Court need not reach the historical analysis step of *Bruen* because Hindman's felony still places him outside the scope of the Second Amendment's protection.

Additionally, even after engaging with the historical inquiry, at least one court in this circuit has found that § 922(g)(1), "even as applied to non-violent felons, is 'consistent with this Nation's historical tradition of firearm regulation.'" *United States v. Ramos*, Case No. 2:21-cr-00395-RGK-1, 2022 WL 17491967, at *5 (C.D. Cal. Aug. 5, 2022) (citing *Bruen*, 142 S. Ct. at 2126); *see also United States v. Hill*, 629 F. Supp. 3d 1027, 1031 (S.D. Cal. 2022) ("Accordingly, even under an expansive reading of the Second Amendment, the felon-in-possession law would nonetheless be constitutional as applied to Defendant given his prior felony convictions.").

*Bruen*'s reasoning is not clearly irreconcilable with the reasoning of *Heller* or *Vongxay*. To the extent *Heller* and *Vongxay* do not follow the precise analysis articulated in *Bruen*, the Court concludes this inconsistency fails to meet the high standard of "clearly irreconcilable." Accordingly, until Ninth Circuit precedent holding 18 U.S.C. § 922(g)(1) constitutional is overruled, this Court is bound to follow that precedent.

# I   CONCLUSION

Having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS Jason Hindman's Motion to Dismiss (Dkt. No. 33) is DENIED.

DATED this 20th day of November 2023.



David G. Estudillo
United States District Judge